> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by _defendant_.
>
> SO ORDERED.
>
> 5-15-19
> DATE  VICTOR MARRERO, U.S.D.J.

**WilmerHale**

May 14, 2019

**BY FAX**

Steven F. Cherry

+1 202 663 6321 (t)
+1 202 663 6363 (f)
steven.cherry@wilmerhale.com

Hon. Victor Marrero
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> D___  5/15/19

Re: *Caruso Management Co. Ltd. v. International Council of Shopping Centers*, No. 1:18-CV-11932 (VM) (S.D.N.Y.)

Dear Judge Marrero:

I write, pursuant to the Court's direction during the parties' May 7 teleconference, to explain further the basis for ICSC's anticipated motion for summary judgment. Caruso cannot establish a genuine dispute of material fact as to essential elements of its antitrust claims: (1) a horizontal conspiracy among its direct competitors; (2) to foreclose Caruso from meeting with retailers; and (3) a reasonable alternative to ICSC's exclusivity provision for minimizing free riding and preserving the procompetitive effects of RECon. Caruso also cannot establish essential elements of its tortious interference claims, including that the Wynn breached its contract with Caruso in 2018, that ICSC procured that breach intentionally and without justification (as to RECon 2018) and is now acting solely out of malice and through wrongful means (as to RECon 2019), or that Caruso has been harmed. The "complete failure of proof concerning []essential element[s] of [Caruso's] case" shows that summary judgment is warranted now. *Conn. Ironworkers Emp'rs Ass'n v. New Eng. Reg'l Council of Carpenters*, 324 F. Supp. 3d 293, 298 (D. Conn. 2018).[1] Indeed, the Second Circuit has admonished that "[i]n the context of antitrust cases, … summary judgment is particularly favored because of the concern that protracted litigation will chill pro-competitive market forces." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 104 (2d Cir. 2002); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (in the antitrust context, "[w]asteful trials and prolonged litigation that 'may have a chilling effect on procompetitive market forces' should be avoided").

## I. Caruso Cannot Show Horizontal Conspiracy (§ 1 Per Se Claim)

Where a group boycott is alleged, the per se rule is limited to "horizontal agreements among direct competitors." *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135-136 (1998). As the Second Circuit has held, a defendant's status as a trade association is insufficient to establish a horizontal agreement. *See N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883

---

[1] Courts regularly grant summary judgment on antitrust claims under such circumstances. *See, e.g., PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 104 (2d Cir. 2002); *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 546 (2d Cir. 1993); *Emigra Grp., LLC v. Fragomen Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 360-61 (S.D.N.Y. 2009).

WILMERHALE

Hon. Victor Marrero
May 14, 2019
Page 2

F.3d 32, 40-41 (2d Cir. 2018) (collecting cases). Instead, the plaintiff must prove that "association members, in their individual capacities, consciously committed themselves to a common scheme designed to achieve an unlawful objective." *Id.*

Caruso contends that emails between ICSC's CEO and three members of its executive board in the days before RECon 2018, *see* PXs 3, 4, 5, show that he "told them" about the dispute between ICSC and Caruso. *See* 4/24/19 Caruso Ltr. 2. These after-the-fact communications simply giving the board members a "heads up" do not establish a horizontal agreement among Caruso's direct competitors. The evidence shows that ICSC adopted its exclusivity provision with the Wynn█████████████████████████, JX 4, and that ICSC's staff unilaterally adopted that provision█████████████████████████████████████████████, *see* McGee Tr. 30:14-31:14, 84:2-85:5; JX 2 at ICSC-00002522. Indeed, the board members at issue are not even Caruso's direct competitors—one, the current chairperson, is employed by a major retailer, and another is employed by an advisor to retailers. *See* PX 2.[2]

Caruso also contends that ICSC adopted exclusivity provisions "in response to complaints from members." 4/24/19 Caruso Ltr. 2. But there is no evidence to support that assertion. And even assuming ICSC's staff did adopt exclusivity provisions in response to member complaints, such complaints arose largely from retailers—*i.e.*, Caruso's *potential customers*. *See* McGee Tr. 68:20-69:11; PX 62. In any event, Caruso fails to explain why ICSC's decision to implement exclusivity provisions to preserve the efficiencies created by RECon for the benefit of the event's diverse attendees (retailers, brokers, advisors, owner/developers, bankers, etc.) in response to attendees' feedback would constitute a horizontal agreement among Caruso's direct competitors.

Given the absence of evidence of a horizontal agreement among Caruso's competitors, summary judgment should be granted on Caruso's per se claim. *See PepsiCo*, 315 F.3d at 110 (affirming summary judgment of per se claim where plaintiff "failed to proffer sufficient evidence of a horizontal agreement"); *Conn. Ironworkers*, 324 F. Supp. 3d at 305 (granting summary judgment where "[b]esides stating that the employers are members of associations (which ... is not enough to show a horizontal agreement), [plaintiffs] have not shown or provided a reasonable basis to infer any agreement among the employers to drive [plaintiffs] out of the market").

## II. Caruso Cannot Show Foreclosure of Competition in a Relevant Market (§ 1 Rule of Reason & § 2 Claims)

Caruso's rule of reason claims fail because its alleged markets do not account for all reasonable substitutes. Caruso competes in the retail real estate market in Southern California and contends that meetings with retailers are essential to its business. But any market for "meetings" makes no sense, since no one buys or sells them.[3] Moreover, any market limited to meetings at the

---

[2]   They were elected by a board of trustees that includes some of the largest retailers in the world, including Walmart, Whole Foods (owned by Amazon), Nordstrom, and others, who dwarf the size of any owner/developers among ICSC's membership. *See Board of Trustees*, https://www.icsc.org/who-we-are/leadership/board-of-trustees.

[3]   *Gelboim v. Bank of America Corp.*, 823 F.3d 759 (2d Cir. 2016), is not to the contrary. *See* 4/24/19 Caruso Ltr. 2. There, plaintiffs alleged that banks agreed to fix prices by manipulating LIBOR, an express component of

**WILMERHALE**

Hon. Victor Marrero
May 14, 2019
Page 3

Wynn during the four days of RECon cannot withstand scrutiny, given the many substitutes for meeting with retailers. Courts routinely grant summary judgment where plaintiffs fail to meet their burden of establishing a cognizable relevant market that includes all reasonable substitutes. *See e.g.*, *PepsiCo*, 315 F.3d at 104; *Emigra Grp., LLC v. Fragomen, Del Rey, Bersen & Loewy, LLP*, 612 F. Supp. 2d 359-60 (S.D.N.Y. 2009); *see also Cinema Vill. Cinemart, Inc. v. Regal Entm't Grp.*, 708 F. App'x 29, 31 (2d Cir. 2017); *Concord Assocs., L.P., v. Entm't Props. Trust*, 817 F.3d 46, 51-52 (2d Cir. 2016); *Elliott v. United Center*, 126 F.3d 1003, 1004-1005 (7th Cir. 1997).[4]

Caruso suggests there is an "issue of fact" because its expert "will testify" that these substitutes do not restrain ICSC's ability to raise prices. 4/24/19 Caruso Ltr. 2. Speculation about what its expert may say in the future is not sufficient to preclude summary judgment. Moreover, this "potential" (at best) argument is completely unfounded. Caruso suggests that a snippet from a single document ███████████████████████████████████████████████████████████████████ *See* Freiberg Decl.; DX 38. ████████ Caruso could have sought discovery about ICSC's costs for RECon—which would have revealed that information—and chose not to. And Caruso ignores that ICSC, a non-profit, ███████████████████████████████████████. DX 38 at 8.

Two additional facts entirely contradict any assertion that ICSC has market power for its trade show. First, RECon ███████████████████████, belying any notion that ICSC has some exclusive provenance in the trade show arena. Mayo Rep., Ex. 5. Second, there are major competing events attended by Caruso and the retailers with whom it meets, which—based on publicly available information—are larger, attract far more retailers, and charge more to exhibit.[5]

Nor can Caruso reasonably contend that it has been substantially foreclosed from meeting with retailers. During RECon, Caruso is free to meet with retailers at the LVCC, as well as at any of

---

prices for certain financial instruments. Here, there is no allegation that "meetings" are an express component of the rents charged to retailers. Indeed, that would be nonsensical.

[4] It has been suggested that ICSC is not entitled to summary judgment because its expert supposedly did not proffer a market. *See* 4/17/19 Op. 20. But Caruso alone bears the burden of establishing a market in which its ability to compete has been foreclosed; ICSC and its expert have no obligation to do so. *See, e.g., Emigra*, 612 F. Supp. 2d at 364 (on "matters as to which plaintiff would have the burden of proof at trial" such as market definition, defendant is "not obliged to come forward with any evidence": rather, defendant is "entitled to seek summary judgment merely be contending that plaintiff cannot prove its allegations," thereby "shift[ing] the burden to [plaintiff] to come forward with admissible evidence in support of [plaintiff's] allegations").

[5] For example, Retail's Big Show, hosted by the National Retail Federation, had 38,000 attendees and charged exhibitors $55/square foot in 2019 (compared with RECon's $10.99/square foot). *See* NRF Retail's Big Show. https://nrfbigshow.nrf.com/; NRF: Retail's Big Show Exhibit Space Application and Contract, https://events.nrf.com/annual2019/CUSTOM/Exhibit_Contract_AN19%20.pdf; Mayo Rep. ¶¶ 42, 44 & Ex. 1.

WILMERHALE

Hon. Victor Marrero
May 14, 2019
Page 4

the noncontracted hotels, restaurants, and other venues in Las Vegas. Caruso is also free to meet informally with retailers anywhere, including at the Wynn, as Caruso has done successfully in the past. *See* Caruso Tr. 34:4-35:19, 70:7-71:16. Outside of RECon, Caruso is free to meet with retailers at other trade shows and events, such as the Women's Wear Daily CEO Summit, ███ ███████████████████████. *See* Caruso Tr. 32:5-35:19. The evidence also shows that at least 75% of the retailers with whom Caruso met at RECon 2018 also attended the National Retail Federation's annual convention, which is much larger than RECon. Mayo Rep. ¶ 42; DX 7; NRF Retail's Big Show, Who Attends, https://nrfbigshow.nrf.com/who-attends. And Caruso is free to meet with retailers at its own offices, retailers' offices, or any other mutually convenient location, as Caruso does throughout the year. *See* Caruso Tr. 30:15-32:4, 36:5-37:1; Colacarro Tr. 27:9-31:20, 36:24-38:5; Nielsen Tr. 31:10-36:8. That Caruso's own witnesses could not identify a single retailer who would not have met with Caruso at the LVCC (much less at any alternative venue) in 2018 or in any other year further establishes that ICSC's exclusivity provision for the Wynn has not foreclosed Caruso from meeting with retailers. Caruso Tr. 84:14-19, 93:6-14, 97:12-15, 170:24-171:11; Nielsen Tr. 93:25-94:3, 118:24-119:2, 126:22-127:1, 177:4-6, 223:25-224:22, 248:14-25.[6]

Accordingly, ICSC is entitled to summary judgment. *See, e.g., Conn. Ironworkers*, 324 F. Supp. 3d at 310-11, 313 (granting summary judgment on antitrust claims where plaintiffs failed to show an actual adverse effect on competition); *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, No. 03 Civ. 1895 (PAC), 2007 WL 39301, at *14 (S.D.N.Y. Jan. 8, 2007) (granting summary judgment where "Plaintiffs fail to establish any injury to the marketplace itself").

### III. Caruso Cannot Overcome ICSC's Procompetitive Justifications (§ 1 Rule of Reason & § 2 Claims)

Caruso also has failed to identify a less restrictive alternative to ICSC's exclusivity provisions. It is undisputed that RECon has procompetitive effects, including maximizing efficiency, lowering transaction costs, and creating other network effects; that offsite meetings diminish those procompetitive effects; and that ICSC's exclusivity provisions are intended to minimize free riding and preserve the procompetitive effects of RECon. *See* Caruso Tr. 62:6-64:24, 173:1-16; Nielsen Tr. 103:21-104:12; PX 62; PX 44 at Slide 14. Indeed, such provisions are commonly used by all major trade shows for the same reasons. McAvoy Rep. ¶ 24. The Second Circuit and other courts have upheld summary judgment under such circumstances.[7]

---

[6] During the May 7 teleconference, Caruso suggested that *United States v. Visa U.S.A., Inc.*, 344 F.3d 229 (2d Cir. 2003), supported its case. There, the evidence showed Visa and Mastercard controlled almost 75% of credit card transactions and prohibited customers from doing business with Amex and Discover. *Id.* at 243. Here, by contrast, there is *no* evidence ICSC prohibits anyone from meeting with Caruso, during or outside of RECon.

[7] *See N. Am. Soccer*, 883 F.3d at 43 ("[e]liminating free riders can be a procompetitive advantage of alleged restraints"); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 340 (2d Cir. 2008) (Sotomayor, J., concurring in affirmance of summary judgment) (observing exclusivity provisions were "reasonably necessary to achieve MLBP's efficiency-enhancing purposes" because they eliminate "the so-called free-rider problem"); *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 223 (D.C. Cir. 1986) (affirming summary

WILMERHALE

Hon. Victor Marrero
May 14, 2019
Page 5

Caruso's argument that ICSC would not suffer "catastrophic" harm if its exclusivity provisions were unenforceable is irrelevant. The same employee ███████████████████████ ███████████████████████ McGuinness Tr. 210:22-211:9. No case requires that free riding would completely destroy an event in order to support a procompetitive justification. Caruso's failure to identify an alternative means of achieving the same result as ICSC's exclusivity provisions entitles ICSC to summary judgment. *See Virgin Atl. Airways*, 257 F.3d at 265 (affirming summary judgment where "nothing in the record ... suggests an alternative program that would achieve the same procompetitive effect as the [challenged] agreements").

### IV. Caruso Cannot Show Breach, Intention or Unjustified Conduct, Malice or Wrongful Means, or Harm (Tortious Interference)

Caruso cannot contend the Wynn breached its contract with Caruso in 2018, having admitted they mutually agreed to move Caruso to Sinatra. *See* Am. Compl. ¶ 6; Weitman Tr. 103:14-104:9. Caruso cannot establish that ICSC acted intentionally and without justification in enforcing its exclusivity provision with the Wynn in 2018 (given the undisputed evidence concerning its understanding of its exclusivity provision) or solely out of malice or through wrongful means in 2019. *See* Kavanagh Tr. 241:11-19; Weitman Tr. 41:6-8.[8] And, finally, the record is devoid of evidence that Caruso was harmed; indeed, ICSC's 30(b)(6) witness admitted it was not harmed, *see* Nielsen Tr. 247:23-248:1—and it bears repeating that Caruso has not identified a single retailer with whom it has been unable to meet as a result of ICSC's conduct.

\*   \*   \*

Summary judgment is appropriate here because Caruso cannot establish a genuine dispute of material fact as to essential elements of its claims. There is no need for additional discovery. Indeed, the relevant evidence is available to Caruso: It knows who it meets with and where and which of those discussions ultimately led to transactions; and information concerning hotels, restaurants, meeting venues, as well as other trade shows and events, is all publicly available.

Respectfully submitted,

/s/ Steven F. Cherry

---

judgment; upholding exclusivity provision as a "classic attempt to counter the perceived menace that free riding poses," noting free-riding "distorts the economic signals within the system so that [it] loses effectiveness in serving consumers").

[8] Caruso theorizes that ICSC "pressured" the Wynn by threatening not to renew its contract with the Wynn if the Wynn did not agree to enforce the exclusivity provision with respect to Caruso's use of the Players Lounge. Both ICSC and the Wynn deny that happened. *See* Kavanagh Tr. 226:14-228:17; Weitman Tr. 124:10-13. Nor does Caruso's argument regarding the language of the 2018 contract hold water. ICSC's signatory testified that he understood the contract to apply to Caruso's event, and the Wynn's corporate representative testified that that was a reasonable interpretation. As the Wynn's representative testified, ███████████████ eitman Tr. 41:6-8. That Caruso presents a different construction after the fact does not render ICSC's conduct "intentional" or "without justification."

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

CARUSO MANAGEMENT COMPANY :
LTD.,
        Plaintiff, :
                              Civ. Action No. 1:18-CV-11932 (VM)
        v. :

INTERNATIONAL COUNCIL OF :
SHOPPING CENTERS,
         :
        Defendant.

------------------------------x

## DECLARATION OF STEFAN FREIBERG

Pursuant to 28 U.S.C. § 1746, I, Stefan Freiberg, declare and state as follows:

1. I am the current Chief Financial Officer at International Council of Shopping Centers ("ICSC"). In that capacity, I oversee the financial planning, risk management, information technology, and investment strategies for ICSC and have access to ICSC's financial data.

2. I have reviewed ICSC's records of its total operating and non-operating expenses associated with RECon between 2015 and 2018.

3. Based on my review of ICSC's records, I understand that between 2015 and 2018, [REDACTED]

4. During this same period of time, [REDACTED] increased by only approximately [REDACTED]

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 14, 2019, at 1221 Avenue of the Americas, 41st Floor, New York, NY, 10020-1099.

                                Stefan Freiberg
                                Chief Financial Officer
                                International Council of Shopping Centers

# WILMERHALE

May 14, 2019

**BY FAX**

Steven F. Cherry

+1 202 663 6321 (t)
+1 202 663 6363 (f)
steven.cherry@wilmerhale.com

Hon. Victor Marrero
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:   *Caruso Management Co. Ltd. v. International Council of Shopping Centers*,
            No. 1:18-CV-11932 (VM) (S.D.N.Y.)

Dear Judge Marrero:

On behalf of Defendant International Council of Shopping Centers (ICSC), enclosed please find a supplemental letter in further support of ICSC's anticipated motion for summary judgment and attached declaration of Stefan Freiberg, as well as proposed redacted versions of those same documents, with limited redactions of information subject to the parties' protective order. Should the Court wish to file these documents on the public docket, ICSC respectfully requests that the Court use the redacted versions.

Respectfully submitted,

/s/ Steven F. Cherry

cc:    All counsel of record (via email)

Encl.